IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WELLS LAMONT INDUSTRY GROUP LLC, | ) ) ) | |
| Plaintiff, | ) ) | 17 C 1136 |
| v. | ) ) | Judge John Z. Lee |
| RICHARD MENDOZA and RADIANS, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wells Lamont Industry Group LLC ("Wells Lamont") has sued Defendants Richard Mendoza ("Mendoza") and Radians, Inc. ("Radians"). Against Mendoza, Wells Lamont alleges violation of the federal Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836 *et seq.* (Count I), violation of the Illinois Trade Secrets Act (ITSA), 765 Ill. Comp. Stat. 1065/1 *et seq.* (Count II), breach of contract with regard to a confidentiality agreement (Count III), and breach of contract with regard to an information technology agreement (Count IV). Against Radians, Wells Lamont alleges tortious interference with contract with regard to both of its agreements with Mendoza (Count V). Mendoza has moved to dismiss Count I, and Radians has moved to dismiss Count V. For the reasons stated herein, Defendants' motions to dismiss [16] [19] are denied.

## Factual Background[1]

Wells Lamont is a company that designs, manufactures, and sells industrial gloves, and its principal place of business is in Illinois. 1st Am. Compl. ("FAC") ¶ 1, ECF No. 7. Mendoza is an Illinois citizen who was a sales representative for Wells Lamont from February 2011 until August 12, 2016, when he voluntarily resigned to take a similar position with Radians. *Id.* ¶¶ 2, 26. Radians, which is also in the business of selling industrial gloves, is in direct competition with Wells Lamont, and its principal place of business is in Tennessee. *Id.* ¶ 3.

Mendoza was "Director of Sales – Primary Materials" for Wells Lamont from February 1, 2013, until his resignation. *Id.* ¶ 10. In this position, some of his responsibilities included establishing sales goals, developing and executing sales plans, and performing priority management for sales. *Id.* ¶ 11. In addition, he was exposed to confidential information in the course of his employment, such as product designs and prototypes. *Id.* ¶ 25.

During the course of his employment, Mendoza signed a confidentiality agreement that defined "confidential information and trade secrets" as including "business information such as product costs, vendor and customer lists, . . . unpublished price lists, . . . and other financial information not yet announced or publicly disclosed." *Id.* ¶¶ 12, 13. The agreement forbade him from "communicat[ing] such confidential information or trade secrets to any other person

---

[1] The following facts are taken from Plaintiff's First Amended Complaint and the exhibits attached thereto, and they are accepted as true on review of Defendants' motions to dismiss. *See Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016).

[or] firm" or "us[ing] such confidential information or trade secrets . . . for the benefit of any other person [or] firm." *Id.* ¶ 13. Mendoza signed this agreement most recently on February 18, 2016. *Id.* ¶ 12. During the course of his employment, Mendoza also signed an information technology agreement that included a confidentiality provision forbidding him from disclosing trade secrets for any purpose other than his official duties. *Id.* ¶ 16. This agreement was most recently signed on February 22, 2016. *Id.* ¶ 15.

In August 2016, Mendoza resigned from Wells Lamont and began working for Radians. *Id.* ¶ 26. Both before and after his resignation, he forwarded to his personal e-mail address confidential information such as customer data, pricing sheets, and sales reports. *Id.* ¶ 27. In September 2016, Wells Lamont learned that Mendoza had reached out to some of his former customers to attempt to convince them to do business with Radians, so Wells Lamont's counsel wrote Mendoza a letter demanding the documents be returned. *Id.* ¶¶ 29, 30. The letter was also sent to Radians and informed it of Mendoza's continuing duties to not disclose or use any confidential information. *Id.* ¶ 30; *id.*, Ex. C, at 2.[2] On October 6, 2016, Wells Lamont received an e-mail from an attorney representing both Mendoza and Radians, admitting that Mendoza had some of Wells Lamont's confidential information in his possession. *Id.* ¶ 31. The next day, Mendoza returned a signed affidavit in which he recounted all the information he had forwarded to his personal

---

[2] Plaintiff's original complaint included six distinct exhibits, and the amended complaint attached the entire original complaint with its exhibits as "Exhibit A." For ease of reference, the Court will refer to the exhibits as identified in the original complaint.

3

e-mail address, and he also admitted that he had delivered a hard copy of one of Wells Lamont's confidential pricing lists to a Radians employee. *Id.* ¶ 32; *id.*, Ex. F ¶ 4.

While Mendoza worked for Wells Lamont, he maintained a relationship with Turner Industries ("Turner") for about three years. *Id.* ¶ 37. In October 2016, after he began working for Radians, Mendoza contacted Turner to attempt to divert its business away from Wells Lamont. *Id.* In January 2017, Mendoza traveled to Turner's office in Texas and "presented replicas of several Wells Lamont Industry products." *Id.* ¶ 38. After Mendoza's presentation, Turner canceled a meeting it had previously set with a Wells Lamont salesman. *Id.* Wells Lamont alleges that Mendoza has continued to use its confidential information to try to siphon away its customers. *Id.* ¶ 41.

## Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6),[3] a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The

---

[3] Although Defendants have moved to dismiss pursuant to Rule 12(b)(1), their arguments are on the merits and are therefore interpreted as arising pursuant to Rule 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("It is well-settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

## Analysis

Mendoza has moved to dismiss Count I of Wells Lamont's complaint, arguing that Wells Lamont has not sufficiently alleged that its information constitutes a trade secret under the DTSA. Mendoza also argues that Wells Lamont's complaint fails to sufficiently plead a violation of the DTSA because it fails to allege that Wells Lamont's goods were used in or intended for use in interstate commerce, and Radians repeats this argument in its own motion.[4] Radians has also moved to dismiss Count V, arguing that Wells Lamont fails to sufficiently allege that Radians tortiously interfered with Mendoza's confidentiality agreements. The Court will address each of these arguments below.

**I.      Count I: Defend Trade Secrets Act**

    **A.      Trade Secret**

Mendoza argues that Wells Lamont has not sufficiently identified the information alleged to be a trade secret. For a complaint alleging violation of the

---

[4] While Count I is not directed against Radians, Radians does so evidently in an attempt to establish the Court lacks jurisdiction over the state law claim levied against it.

DTSA to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must identify the purported trade secrets, but it may do so generally to avoid publicly disclosing the information in its court filings. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) (holding that a complaint was well-pleaded when it identified the purported trade secrets as including "business models, . . . business plans, and product development plans"). Here, Wells Lamont alleges that Mendoza was exposed to confidential information such as "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports," FAC ¶ 25, and that he took "substantial amounts" of this information with him to Radians once he resigned from Wells Lamont, *id.* ¶ 27. These allegations are sufficient to state a DTSA claim. *E.g.*, *SleekEZ, LLC v. Horton*, CV 16-09-BLG-SPW-TJC, 2017 WL 190695, at *4 (D. Mont. Apr. 21, 2017) (holding that the allegations were adequate when the complaint generally described the information as its "industry contacts and customers[] and its marketing and business strategies"); *Aggreko, LLC v. Barreto*, No. 1:16-CV-353, 2017 WL 963170, at *2 (D. N.D. Mar. 13, 2017) (holding that a complaint's allegations were adequate when they described the trade secrets as "including customer lists and information regarding [the plaintiff's] operations, customers, business proposals, pricing strategy, client preference and history, and proprietary pricing models").⁵ Because Wells Lamont has generally identified

---

⁵ To the extent Mendoza argues that Wells Lamont's customer identities and business plans cannot constitute trade secrets, this argument fails at the motion to dismiss stage. *Mission Measurement*, 216 F. Supp. 3d at 921; *see also Aggreko*, 2017 WL 963170, at *2.

6

which trade secrets have been misappropriated, its allegations are sufficient to survive a motion to dismiss.[6]

### B. Interstate Commerce

Defendants also argue that Wells Lamont failed to allege that its goods were used in or intended for use in interstate commerce. Because the DTSA was enacted only recently, there is limited case law relating to whether pleading this specific aspect of a DTSA claim is required. But assuming without deciding that it is,[7] Wells Lamont's allegations are sufficient for the Court to reasonably infer that Wells Lamont's goods were used in or intended for use in interstate commerce.

The complaint alleges that "[d]uring Mendoza's employment with Wells Lamont[,] Mendoza maintained a roughly three-year relationship with Turner." FAC ¶ 37. Subsequently, while Mendoza was a Radians employee, he traveled to Texas for a meeting at Turner's regional office. *Id.* ¶ 38. At this meeting, Mendoza presented replicas of Wells Lamont products, and Turner then proceeded to cancel a meeting that it had already scheduled with a Wells Lamont salesman. *Id.* Because Turner's regional office in Texas had a previously arranged meeting with Wells

---

[6] The statutory definition of a trade secret includes the two additional elements of whether the plaintiff reasonably attempted to maintain the information's secrecy and whether the information has independent economic value by not being readily known or ascertainable. 18 U.S.C. § 1839(3). Mendoza does not contest these aspects of Wells Lamont's claim, and Plaintiff is entitled to all reasonable inferences at this preliminary stage.

[7] Defendants have not provided any support for their assertion that such pleading is required. In the only case the Court has found that addresses this point in the context of the DTSA, a federal district court in Delaware dismissed a complaint that "fail[ed] to allege any nexus between interstate or foreign commerce and the [products or services at issue]." *Hydrogen Master Rights, Ltd. v. Weston*, No. 16-474-RGA, 2017 WL 78582, at *10 (D. Del. Feb. 6, 2017). Here, however, for the reasons that follow, dismissal is not warranted.

7

Lamont, the Court can reasonably infer that Wells Lamont was also doing business (or intended to do business) with Turner in Texas. And, as Wells Lamont is based in Illinois, the Court can also infer that its goods were intended to cross state lines and thus intended for use in interstate commerce.

Additionally, Wells Lamont's response briefs represent that its goods were either used in or intended for use in interstate commerce. Pl.'s Resp. Def. Mendoza's Mot. Dismiss at 9 n.2, ECF No. 23; Pl.'s Resp. Def. Radians's Mot. Dismiss at 11 n.4, ECF No. 24. The Seventh Circuit has held that "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent [with] the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (internal quotation marks and citations omitted). Here, Wells Lamont's assertions that its goods were used or intended for use in interstate commerce are consistent with the allegations in its complaint. Thus, dismissing Wells Lamont's DTSA claim and granting leave to amend to include this fact would be an inefficient use of the Court's and the parties' time and resources. For the foregoing reasons, Mendoza's motion to dismiss Count I is denied.[8]

---

[8] Mendoza's reply brief mentions for the first time that Mendoza and Radians deny that either party misappropriated Wells Lamont's trade secrets. Mendoza's Reply 1–3, ECF No. 25. The Court is not obligated to address this argument because "the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Even if this argument had been raised properly, however, it would fail. The DTSA defines misappropriation as disclosure or use of a trade secret by "a person who . . . knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). Here, Mendoza's signed confidentiality agreement created a contractual duty to maintain secrecy, and the

**II.     Count V: Tortious Interference with Contract**

Radians also argues that Wells Lamont has failed to adequately allege that Radians induced Mendoza to breach his contracts with Wells Lamont. Under Illinois law,[9] a claim for tortious interference with contract comprises five elements: "(1) the existence of a valid and enforceable contract; (2) the defendant's awareness of the contractual relation; (3) the defendant's intentional and unjustified inducement of breach of the contract; (4) a subsequent breach by the other contracting party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (citing *Hi-Tek Consulting Servs., Inc. v. Bar–Nahum*, 578 N.E.2d 993, 997 (Ill. App. Ct. 1991)). Here, two elements are at issue: intentional inducement of breach, and a breach caused by that inducement.[10]

Turning first to intentional inducement, Radians argues that its knowledge of Mendoza's confidentiality agreement is insufficient to establish liability because

---

complaint alleges that Mendoza disclosed and used Wells Lamont's trade secrets. FAC ¶¶ 12–13, 40–41. Thus, the complaint sufficiently alleges that Defendants misappropriated the information. *Cf. Molon Motor & Coil Corp. v. Nidec Motor Corp.*, No. 16 C 03545, 2017 WL 1954531, at *4–5 (N.D. Ill. May 11, 2017) (holding that the defendant's employment agreement imposed a duty to maintain secrecy when the agreement stated that all products developed by the plaintiff-employer were the plaintiff's "sole and exclusive property").

[9]     The Court applies Illinois law, *i.e.*, the law of the forum state, because the parties do not raise an issue as to what law applies. *Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir. 1985) ("Where parties fail to raise a possible conflict of substantive laws, the better rule . . . is that the substantive law of the forum controls.").

[10]    Radians's motion states that it "does not concede that the Plaintiff has properly pleaded any of the [five] elements," but these are the only two addressed by the motion. Def. Radians's Mem. Supp. Mot. Dismiss at 5, ECF No. 20. They are therefore the only two that will be addressed. *See Sanchez v. City of Chi.*, 700 F.3d 919, 934 n.4 (7th Cir. 2012) (stating that undeveloped arguments are waived).

9

its knowledge does not automatically imply intentional inducement. Radians's Mem. at 4. For its part, Wells Lamont contends that it has sufficiently alleged that Radians intentionally interfered with its contracts by hiring Mendoza. Resp. Def. Radians at 4; *see* FAC ¶ 80. A complaint that alleges the interferor had knowledge of a contract and then placed a contracting party in a position to breach sufficiently pleads intentional inducement. *Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 641 (N.D. Ill. 2016) (holding that defendant-employers induced a breach when they were aware of the confidentiality agreements in question but employed the individuals anyway and "allow[ed] [them] to use potentially confidential information to recruit customers"). Additionally, it is sufficient to plead as a general matter that the interferor's inducement was intentional. *Compare Maximum*, 218 F. Supp. 3d at 640–41 (holding that the allegation that the defendant "interfered with [the plaintiff's] rights" was sufficient to survive a motion to dismiss), *with Owens Trophies, Inc. v. Bluestone Design & Creations, Inc.*, No. 12 C 7670, 2014 WL 126082, at *5 (N.D. Ill. Feb. 7, 2017) (holding that alleging a defendant's conduct was "wrongful" was too conclusory); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Here, the complaint states that Radians "intentionally interfered with Wells Lamont['s] rights . . . by knowingly employing or otherwise associating with Mendoza" and "induced Mendoza to breach his contractual obligations." FAC ¶ 80. The complaint further states that Radians was aware of Wells Lamont's

confidentiality agreements with Mendoza. FAC ¶ 30; *id.*, Ex. C. Moreover, in September 2016, Wells Lamont's counsel wrote to Defendants to inform them of Mendoza's "ongoing obligations" under the confidentiality agreements. *Id.*, Ex. C, at 2. Wells Lamont then received a response from Defendants' counsel in October 2016, acknowledging receipt of the letter on behalf of both parties. *Id.* ¶ 31; *id.*, Ex. D. Following receipt of this response, Mendoza traveled to Texas to meet with Turner in January 2017. *Id.* ¶ 38. Thus, accepting these allegations as true, Radians must have known of Mendoza's confidentiality agreements at the time of his meeting with Turner. Radians's sending Mendoza to recruit a client he had worked with at Wells Lamont therefore suffices to allege intentional inducement.

    Radians also argues that Wells Lamont does not adequately allege Radians's inducement caused the breach. But under the federal pleading standard, plaintiff need do no more than claim that the defendant interfered with the contract at issue by soliciting the third party to breach and that the breach actually occurred. *See, e.g.*, *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 637 (N.D. Ill. 2016); *see also Maximum*, 218 F. Supp. 3d at 641. Here, Wells Lamont claims that Radians hired Mendoza and then sent him to a meeting in Texas with some of Wells Lamont's products. FAC ¶¶ 26, 38. Wells Lamont also alleges that Mendoza breached both of the confidentiality agreements, *id.* ¶¶ 71, 75, and that Radians induced those breaches, *id.* ¶ 80. In sum, because the complaint alleges that Radians's sending Mendoza to Texas caused him to breach his agreements, the element of causation is

11

adequately pleaded. Radians's motion to dismiss Count V is therefore denied.[11]

## Conclusion

For the reasons stated herein, Defendants' motions to dismiss [16] [19] are denied.


**IT IS SO ORDERED.**      ENTERED   7/31/17

_____
**John Z. Lee**
**United States District Judge**

---

[11] Radians cursorily mentions that it is "entitled" to compete with Wells Lamont, and Wells Lamont's response assumes that Radians is claiming the competitor's privilege as an affirmative defense. *See* Radians's Mem. at 5; Resp. Def. Radians at 6. First, plaintiffs are not required to "anticipate or attempt to defuse potential defenses" in their complaints. *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005). Additionally, under Illinois law, the competitor's privilege applies only to claims of tortious interference with prospective economic advantage and so would be inapplicable here, where Wells Lamont claims tortious interference with an existing contract. *Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98, 101 (Ill. App. Ct. 1980).